No. 26,024.

The Peoples National Bank of Kansas City, *Appellee*, v. F. W. Edmunds, M. D. Brown, and W. H. White, Interpleader, *Appellants*.

SYLLABUS BY THE COURT.

1. Chattel Mortgages—*Action for Possession of Property—Lien of Mortgagor for Care.* In an action for the possession of cattle under a chattel mortgage it is held that no reversible error was committed in striking out evidence offered by the mortgagor in support of a claim that he was entitled to a first lien on account of expenses incurred by him in moving and caring for the cattle under direction of the mortgagee.

2. Same—*Property Covered—Evidence.* The evidence is held to have justified the submission to the jury of the question whether the plaintiff's chattel mortgage covered the cattle replevied under it.

3. Same—*Filing and Recording—Verification of Pleadings.* Objections to the want of verification of a pleading and to the time of filing a chattel mortgage for record held not to be well founded.

Appeal from Pawnee district court; Roscoe H. Wilson, judge. Opinion filed July 11, 1925. Affirmed.

*W. J. Pirtle*, of Council Grove, *Edwin Anderson*, of McPherson, and *R. E. Peterson*, of Larned, for the appellants.

*Lorin T. Peters, Andrew F. Schoeppel*, both of Ness City, and *J. S. Vernon*, of Larned, for the appellee.

The opinion of the court was delivered by

Mason, J.: On December 9, 1922, the Peoples National Bank of Kansas City, Kan., brought this action of replevin for possession of·

---

1. Chattel Mortgages, 11 C. J. § 322.    2. Id., 11 C. J. § 324.    3. Id., 11 C. J. § 199; Pleading, 31 Cyc. p. 532.

113 head of cattle under a chattel mortgage given December 24, 1919, by F. W. Edmunds, who will be spoken of as the defendant, and others. It recovered judgment, from which appeals are taken by Edmunds, who asserted a prior lien growing out of expenses claimed to have been incurred by him in caring for the cattle under direction of the plaintiff, and by an interpleader, W. H. White, who asserts that thirty-one head of the replevied stock are covered by a chattel mortgage given to him by the defendant.

1. The defendant asserts that at the request of the plaintiff he expended $739.83 in the fall of 1922 in shipping the cattle from Council Grove to Larned and in feeding and caring for them after their arrival there. He complains of the ruling of the district court in striking out his testimony in this connection. There was evidence that he had sold forty-two head of the mortgaged cattle to farmers near Council Grove, taking notes and mortgages which he indorsed to the plaintiff, and which were held by it as collateral. On direct examination he gave this version of a conversation with two representatives of the plaintiff:

"What did you tell Mr. Browne and Mr. Gulick about it? Well, I thought it advisable to move the cattle to where they could be sold.

"That is, to take them up under your mortgages that you had? Well, I went to the people that owned them.

"Well, did you tell Mr. Browne and Mr. Gulick about that? Yes, sir.

"What did they say? Well, they agreed with me that they ought to be moved and sold.

"Tell what they said? Well, they wanted the cows sold. They said they wanted them sold.

"Well, what did they say about taking them back from these farmers, if anything? They said see the farmers and see who will give up their cows.

"Did you go and see the parties about it? Yes, sir.

"And these forty-two head of cattle taken up from farmers, you went to see about that on the talk with Mr. Gulick and Mr. Browne, did you? Yes, sir.

"Were these the same cattle you shipped here to Larned? Yes, sir."

This testimony does not show any agreement to give the defendant a lien on the cattle for his expenses in moving and caring for them, or even to reimburse him therefor. It indicates rather that he was handling them in his own interest in order that the mortgage debt might be paid. There was evidence that he told the plaintiff's representative he expected to be able to sell the cows at Larned to people who would use them to furnish milk to a new milk plant there. Correspondence between him and the plaintiff shows that

shortly before the shipment of the cattle the plaintiff was urging him to make arrangements for their sale to reduce his indebtedness. One letter written to him on October 13, 1922, read:

"Please let us know by return mail how you are getting along with the shipment of cows? You will remember that under the agreement you only have another week in which to get two more carloads under shipment or sold. It is absolutely necessary that we have a material reduction on this loan, and if you are not going to sell the cattle it will be necessary for us to take the matter in hands ourselves."

Moreover, the defendant made no such showing of having incurred expenses as to preserve for review the question of his right to reimbursement. His offer of proof on this point was rejected and was not followed up by an affidavit or other sworn evidence of what he would have been able to prove. Therefore the ruling cannot be made a basis of reversal. (R. S. 60-3004.)

2. On February 5, 1920, twenty head of the cattle included in the plaintiff's mortgage were sold by the defendant to J. S. Hughes, who paid for them with a note and mortgage, which were transferred to the plaintiff and later fully paid, the last payment being made about June 29, 1922. Hughes afterward sold these cattle, or a part of them, to the defendant. On November 20, 1922, the defendant executed to W. H. White, the interpleader, a chattel mortgage on thirty-one head of the cattle he had shipped to Larned. The defendant and the interpleader assert, and the plaintiff denies, that these thirty-one head are a part of the Hughes cattle which he sold to the defendant, with their increase, and are not covered by the plaintiff's mortgage, such of them as were originally covered by it having been released by the payment by Hughes to the plaintiff of the mortgage and notes he had given for them. The defendant and the interpleader produced direct testimony in support of their claim in this regard, and they contend that there was no evidence to the contrary, and therefore that the verdict was to this extent without support. A representative of the plaintiff testified, however, that at Council Grove in the summer of 1922 the defendant told him he would ship no cattle to Larned excepting those covered by the plaintiff's mortgage, and repeated this at Larned about the middle of September; that he also told him after the cattle had arrived there that they were shipped pursuant to the prior talk, and said of the cattle which were replevied that they had been shipped to be sold to pay the plaintiff's mortgage. The plaintiff introduced a

memorandum made by this representative at the time of the talk at Council Grove, from data furnished by the defendant, enumerating cattle on hand covered by the plaintiff's mortgage, and specifying those which were to be shipped to Larned, including twelve cows which were already there. Including these twelve head, the list showed 107 cows and two-year-old heifers and fifty-one yearlings and calves. The list on hand showed opposite the name "J. S. Hughes" thirty-four cows, one bull, five two-year-old heifers, twelve yearling heifers and twenty calves, but these were omitted from the list marked "to be shipped." The defendant testified: "I know that the cattle contained in this lawsuit are the twenty original cows that Mr. Hughes bought and for which he gave the $3,000 note, and their increase." Hughes, being asked what became of the original twenty head, answered: "Some of them died and some of them were sold during the time that we had them. I cannot tell you what became of the twenty original cows." We think the question whether the cattle claimed by the interpleader under his mortgage were a part of the Hughes herd was one of fact, properly submitted to the jury, and resolved by them in the negative.

The exhibit referred to concerning the list of cattle to be shipped is said to have been lost, but the appellants submit what is said to be a copy, which we treat as though it had been incorporated in the abstract.

A special contention is made with respect to eight head of the cattle which were too young to have been in existence or to have been conceived at the time the plaintiff's mortgage was executed. The appellants make the point that for this reason they cannot be covered by it. The plaintiff replies that, as already stated, the defendant sold a number of head to different farmers, who paid for them with notes secured by chattel mortgages which were transferred to the plaintiff, and which it held as collateral to the principal note and mortgage. The making and transfer of a number of such chattel mortgages were proved. The evidence already referred to, that the defendant while in possession of the cattle told the plaintiff's representative that they were covered by its lien, warranted a finding that they were brought within its operation in this way.

3. At the hearing of the motion for a new trial the interpleader asked for a judgment in his favor upon the pleadings on the ground that the allegations of his interplea, which set up the execution of

the mortgage to him, had not been denied under oath. The interplea was not founded on the promissory note, but on the chattel mortgage, and the want of verification of the plaintiff's answer admitted only its execution, which has not been questioned; it did not admit that the cattle described in the interpleader's mortgage were a part of the Hughes bunch, which was the matter at issue. Moreover, the objection would have been too late in any event.

The appellants seek to make a point based on the fact that the plaintiff's mortgage, although filed at once in Ness county, was not made of record in Morris county until June 26, 1922. The matter is unimportant, since the defendant necessarily knew of it, and the interpleader's claim accrued after the record was complete.

The judgment is affirmed.